UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REPUBLIC FRANKLIN INSURANCE COMPANY,<br>　　　　Plaintiff,<br><br>　　v.<br><br>MISS HALL'S SCHOOL, INC. AND JEANNIE NORRIS,<br>　　　　Defendants. | Civil Action No. 3:25-cv-30042-KAR |

## MEMORANDUM IN SUPPORT OF MOTION TO STAY

**I.　INTRODUCTION**

Plaintiff Republic Franklin Insurance Company ("Republic Franklin") seeks a declaratory judgment that it has no duty to indemnify defendants Miss Hall's School, Inc. ("MHS") and Jeannie Norris in connection with a civil suit pending in the Massachusetts Superior Court (the "Underlying Litigation"). As other courts have done in similar situations, the Court should exercise its discretion to stay this declaratory judgment action until the Underlying Litigation is resolved. First, this dispute is not ripe: Republic Franklin's duty to indemnify cannot be determined until the Underlying Litigation is resolved and a determination is made whether or not MHS or Ms. Norris has any liability and, if so, the facts on which that liability is based. Second, the core of this coverage dispute is factual in nature—whether MHS and Ms. Norris knew about certain wrongful acts of a third party during the relevant period. These same facts are also at the center of the Underlying Litigation. Accordingly, the Court should exercise its broad discretion to stay this case to avoid duplicative litigation that would prejudice MHS, Ms. Norris, and third parties.

## II.  THE UNDERLYING LITIGATION

MHS is an independent, college preparatory, boarding and day school for girls in grades 9–12. Ms. Norris is a former Head of School for MHS. On October 14, 2024, a former MHS student, Melissa Fares, filed a lawsuit against MHS, Ms. Norris, three Jane Does, and Matthew Rutledge in the Berkshire Superior Court (No. 2476CV00161)—the Underlying Litigation. Ms. Fares's initial complaint was superseded by an Amended Complaint filed on January 9, 2025. A copy of this Complaint ("Fares Am. Compl.") is attached as an exhibit to the complaint in this declaratory judgment action ("RF Am. Compl.").

The factual allegations of the Underlying Litigation center on the activities of Matthew Rutledge, a former MHS teacher. Ms. Fares's various causes of action against MHS, Ms. Norris and the Jane Does seek damages resulting from Mr. Rutledge's conduct, alleging that he "groomed, violated boundaries, sexually harassed, sexually abused and engaged in other sexual misconduct toward" Ms. Fares. Fares Am. Compl. ¶¶ 66, 71, 76, 81. The Jane Does are described in the Amended Complaint as "current or former administrative and/or supervisory employees of Miss Hall's who knew or should have known that Rutledge had a propensity to sexually abuse children at Miss Hall's prior to or during the time that Rutledge sexually raped and abused Melissa yet failed to take action to protect Melissa from Rutledge's predatory and abusive misconduct." *Id.* ¶ 5.

Ms. Fares's Amended Complaint asserts three counts against Ms. Norris and the three Jane Does, all sounding in negligence. In support of those counts, Ms. Fares alleges that Ms. Norris and the Jane Doe defendants "knew, or in the exercise of reasonable care should have known" of Rutledge's alleged misconduct with respect to MHS students including Ms. Fares or that he was not fit for a position in which he had access to teenage girls, and negligently failed to monitor and supervise Mr. Rutledge. *Id.* ¶¶ 57–58, 63–64 (Count II: negligent supervision and retention in

2

alleged violation of "duty to supervise and/or monitor"); *see id.* ¶ 75 ("knew or should have known") (Count IV: negligent supervision of Ms. Fares); *id.* ¶ 79 ("knew or should have known") (Count V: negligence).

Ms. Fares's Amended Complaint asserts a single count against MHS for an alleged violation of the Massachusetts Fair Educational Practices law, M.G.L. c. 151C. This statute provides that it is an "unfair educational practice for an educational institution" to, among other things, "sexually harass students in any program or course of study in any educational institution." M.G.L. c. 151C, § 2(g). Ms. Fares claims that "Rutledge's acts of grooming, violating boundaries, sexually harassing, sexually abusing and otherwise engaging in sexual misconduct toward Melissa constitutes sexual harassment in violation of GL c 151C §2(g)." Fares Am. Compl. ¶ 71 (Count III).

Finally, Ms. Fares's Amended Complaint asserts a single count against Mr. Rutledge for assault and battery (Count I).

MHS and Mr. Rutledge filed answers to the Amended Complaint in January and February 2025; Ms. Norris filed her answer to the Amended Complaint on June 30, 2025.

## III.   THE INSURANCE POLICY AND THE DECLARATORY JUDGMENT ACTION

Republic Franklin issued a number of commercial general liability insurance policies to MHS. RF Am. Compl. ¶ 16.[1] One of these policies covered the period from July 1, 2007 to July 1, 2008 (the "Policy").[2] *Id.* During this period, Ms. Norris was the head of MHS. Fares Am.

---

[1] This Memorandum cites to the document entitled Second Amended Complaint filed by Republic Franklin on July 29, 2025. Republic Franklin has sought leave to file a Third Amended Complaint, which has no material differences for purposes of this Motion to Stay other than the proposed addition of Ms. Fares as a party.

[2] In this Memorandum in Support of its Motion to Stay, MHS and Norris recite language from the exhibits to Republic Franklin's Complaint. However, as Republic Franklin acknowledges—Am. Compl. ¶ 17—a complete copy of the Policy has not been located. MHS and Norris accept

Compl. ¶¶ 9–10. As such, Ms. Norris and MHS are both "insureds" under the Policy. *See* Policy § 2 ("WHO IS AN INSURED").

Republic Franklin undertook the defense of the Underlying Litigation on behalf of both MHS and Ms. Norris, subject to a reservation of rights. RF Am. Compl. ¶ 18. On March 14, 2025, Republic Franklin filed this federal case, seeking a declaratory judgment that it has no duty to defend MHS or Ms. Norris in the Underlying Litigation and no duty to indemnify MHS or Ms. Norris in the Underlying Litigation. On May 6, 2025, Republic Franklin filed an amended complaint, eliminating its request for a declaration relating to its duty to defend MHS and Ms. Norris. Accordingly, the sole relief Republic Franklin seeks is a declaration relating to its duty to indemnify MHS and Ms. Norris. A second amended complaint was filed on July 29, 2025 and Republic Franklin has sought leave of court to file a third amended complaint.

Republic Franklin's request for declaratory judgment under each of its complaints relies on language it asserts can be found in an "Abuse or Molestation Liability Coverage Form" (the "Form") accompanying the policy's broad Commercial General Liability Coverage in effect at the time of Mr. Rutledge's alleged misconduct. The Form promises that Republic Franklin "will pay on behalf of the insured those sums that the insured becomes legally obligated to pay for 'loss' to which this insurance applies." Form §§ I.1.a. "'Loss' means any damages which the insured is legally obligated to pay for any claim to which this insurance applies and shall include judgments and settlements and also include damages claimed by any person or organization for care, loss of services, or death resulting at any time from a 'wrongful act.' Form § V.2.a. A "wrongful act" is defined to include both (a) "abuse or molestation (including sexual misconduct or sexual

---

Republic Franklin's assertion regarding the text of the Policy's terms for purposes of this Motion only and reserve all rights with respect to the existence and contents of any alleged policy exclusions or limiting provisions on which Republic Franklin seeks to rely.

4

molestation) which results in injury to another;" and (b) "[t]he negligent Employment; Investigation; Supervision; Reporting to the proper authorities, or failure to so report; or Retention" of a person who engages in such injurious abuse or molestation and for whom legal responsibility may run to an insured. *Id.* V.3.

The Form excludes coverage for persons who either "(1) Participated in or who conspired with or directed a participant in any 'wrongful act'; or (2) Knowingly allowed any 'wrongful act' or failed to report any 'wrongful act' to proper authorities." *Id.* I.2.a. Thus, the Policy covers negligent acts and omissions that result in sexual abuse, with the exception of persons who participate in abuse or who know of the abuse and allow it to take place or knowingly fail to report it.

This distinction between negligence and actual knowledge is conveniently overlooked in Republic Franklin's complaint for a declaratory judgment. In particular, Republic Franklin ignores the allegations of negligence in the Underlying Complaint, as demonstrated by a comparison of the allegations of the Complaint in this action and that in the Underlying Litigation:

| Republic Franklin's Amended Complaint | Ms. Fares's Amended Complaint |
| --- | --- |
| Par. 11: Ms. Fares further alleges that MHS administrators, including Ms. Norris, **knew** of Rutledge's prior misconduct towards the other students, but took no action to protect its students.<br><br>Par. 22: MHS and Ms. Norris **knowingly allowed** Rutledge's "wrongful acts" towards MHS students. | Introduction: Jeannie Norris and Does 1 through 3 **knew or should have known** about his prior misconduct.<br><br>Par. 5: [Jane Does] **knew or should have known** that Rutledge had a propensity to sexually abuse children at Miss Hall's<br><br>Pars. 58, 59, 63, 64, 75, 79: Norris and Does 1-3 **knew, or in the exercise of reasonable care should have known** [various facts concerning Rutledge's misconduct] |

5

| Republic Franklin's Amended Complaint | Ms. Fares's Amended Complaint |
|---|---|
| Par. 12: Ms. Fares makes detailed allegations in her amended complaint concerning MHS's and Ms. Norris's **prior knowledge** that Rutledge "was a sexual predator who had groomed, harassed, and/or abused students for over a decade" prior to Rutledge sexually abusing and raping Ms. Fares. | Par. 47: By the time Melissa arrived at the School in 2007, Norris and Does 1-3 and/or other prior administrators **were on notice** that Rutledge was a sexual predator who had groomed, harassed, and/or abused students for over a decade. |

The only reasonable reading of the Underlying Litigation is that Ms. Fares has pled her case in the alternative. More particularly, Ms. Fares alleges that Ms. Norris and the Jane Does either "knew" or "should have known" (but did not actually know) about Mr. Rutledge's past misconduct with other students. Ms. Fares does not allege that MHS or Ms. Norris had contemporaneous knowledge of Mr. Rutledge's misconduct with Ms. Fares.

Although the Underlying Litigation alleges alternative theories of actual knowledge and negligent failure to acquire knowledge, Republic Franklin's Amended Complaint focuses on allegations of actual knowledge only, and completely ignores the parallel allegations of negligence. With this selective reading of the Amended Complaint, Republic Franklin then asserts that MHS's and Ms. Norris's alleged knowledge trigger two policy exclusions: (1) the exclusion for persons who "Knowingly allowed any 'wrongful act' or failed to report any 'wrongful act' to proper authorities;"[3] and (2) the exclusion that requires "written notice within 60 days of your being notified of an incident which appears likely to result in a claim or 'suit' involving a 'wrongful act.'" RF Am. Compl. ¶¶ 20–23. Both of these exclusions require actual knowledge or notice to be triggered. Negligence is not enough, a conclusion that Republic Franklin has tacitly

---

[3] Republic Franklin seems to read "knowingly" as applying only to "allowed" as opposed to both "allowed" and "failed to report." Even if this were correct as a matter of grammar—it is not—one cannot "fail[] to report" an act that one does not know about. Actual knowledge is required to trigger either aspect of this exclusion.

acknowledged by omitting any reference to the "should have known" allegations from its Amended Complaint.

### III. THE LEGAL STANDARD

The Court has wide discretion in deciding whether to stay this declaratory judgment action. This discretion stems from two sources. The first is the Declaratory Judgment Act itself.

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface. We have repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant. When all is said and done, we have concluded, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995) (cleaned up; citations omitted).

Second, "[i]t is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention." *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154 (1st Cir. 1992).

In the context of a motion to stay a declaratory judgment action relating to an insurer's duty to indemnify an insured for its potential liability in a separate underlying suit against the insured, Judge Casper has summarized the question as follows:

> "The question for a district court presented with a suit under the Declaratory Judgment Act ... is 'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.'" *Wilton,* 515 U.S. at 282 (quoting *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)). The Supreme Court has not provided an exclusive list of factors governing this analysis, but it has noted that district courts should look for guidance to the scope of the pending state court proceedings, the available state

> court defenses, and whether the claims of all parties in interest can be resolved in the state court proceedings. *Id.* at 283. Specifically, where "parallel proceedings ... presenting opportunity for ventilation of the same state law issues [are] underway in state court," the Supreme Court held in *Wilton* that these considerations "clearly support" a court's decision to stay or dismiss a declaratory judgment action. *Id.* at 290. "A court in deciding whether to exercise its broad discretion to dismiss an action pending the outcome of a parallel state action should compare the nexus between the two suits, considering the totality of the circumstances." *Petricca v. FDIC,* 349 F.Supp.2d 64, 67 (D.Mass.2004).

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Mar. Terminal, Inc.*, No. 14-14541-DJC, 2015 WL 3952766, at *3 (D. Mass. June 29, 2015) (alteration in original).

IV.    **ARGUMENT**

    A. A Declaration Concerning Republic Franklin's Duty to Indemnify Must Await the Outcome of the Underlying Litigation.

This case does not relate to Republic Franklin's duty to defend: only its duty to indemnify. Generally, "[t]he issue of indemnification must await the completion of trial." *Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mut. Ins. Co.*, 396 Mass. 633, 638 (1986). Awaiting the disposition of the Underlying Litigation is necessary because only then is there clarity on the question of liability and whether liability, if any, is based on facts that would trigger a policy exclusion. Those facts must be litigated in the Underlying Litigation in the first instance.

Based on this bedrock principle, this court has regularly found that adjudication of the duty to indemnify is not ripe for resolution until the corresponding underlying litigation is completed. *See, e.g.*, *State Farm Fire & Cas. Co. v. Pike*, 389 F. Supp. 3d 94, 99 (D. Mass. 2019) ("Accordingly, 'a declaratory judgment is not yet ripe for consideration regarding the duty to indemnify where, as here, the underlying action has not determined liability or adjudicated factual disputes.'") (quoting *Narragansett Bay Ins. Co. v. Kaplan*, 146 F. Supp. 3d 364, 372 (D. Mass. 2015)); *AIG Prop. Cas. Co. v. Green*, 217 F. Supp. 3d 415, 429 (D. Mass. 2016) ("[S]ince the underlying defamation cases have not yet been resolved . . ., '[t]he issue of indemnification must

8

await the completion of trial' or settlement.") (citing *Newell-Blais Post*); *Atain Specialty Ins. Co. v. Davester LLC,* No. 19-CV-11634-IT, 2019 WL 5087338 (D. Mass. Oct. 10, 2019) (denying motion to stay as to duty to defend[4], but granting motion to stay as to duty to indemnify, which insurer did not oppose); *accord John Moriarty & Assocs., Inc. v. Zurich Am. Ins. Co.*, 102 Mass. App. Ct. 474, 489 (2023) ("We agree with the motion judge that an order regarding indemnification is premature."); *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("[T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."); *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) (reaching same conclusion and citing cases).

> B. A Discretionary Stay is Appropriate Because Whether the Exclusions Apply Cannot Be Resolved Without Deciding Issues Central to the Underlying Litigation.

Even if questions relating to the duty to indemnify were ripe for decision, the Court should nevertheless exercise its considerable discretion to stay this declaratory judgment action until the Underlying Litigation is resolved. Whether analyzed using the factors set forth in *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491 (1942) and re-affirmed in *Wilton* for deciding whether to entertain a declaratory judgment action, or whether viewed through the lens of managing the Court's docket to ensure the efficient administration of justice and prevent prejudice arising out of duplicative litigation, a stay is appropriate here.

---

[4] This distinction between the duty to defend and the duty to indemnify makes sense. The duty to defend is usually resolved as a matter of law based solely upon a comparison of the policy and the complaint against the insured to assess whether the allegations against the insured are "reasonably susceptible of an interpretation that states or roughly sketches a claim" that falls within the policy. *Billings v. Com. Ins.* Co., 458 Mass. 194, 200 (2010). In contrast, as in this case, the duty to indemnify typically will depend on fact issues that are the subject of the underlying litigation and the basis for any judgment against the insured.

9

The Underlying Litigation is clearly "parallel litigation" for purposes of applying the *Brillhart* factors. "[T]he absence of identity of parties between the Underlying Actions and the present case does not preclude a stay." *Mar. Terminal*, 2015 WL 3952766, at *4 (applying *Brillhart* factors in action seeking declaratory judgment on duty to indemnify). Thus, even though Republic Franklin is not a party to the Underlying Action (and even if Ms. Fares is not added as a party to this case), these cases are parallel for purposes of *Brillhart*.[5]

The primary factor that makes the Underlying Litigation "parallel" is the factual questions at the core of Republic Franklin's declaratory judgment claim—what, if anything, did Ms. Norris and MHS know about Mr. Rutledge's conduct and when did they know it—is also at the core of Ms. Fares's state court claims. These facts will be a focus of the Underlying Litigation. Avoiding duplicative litigation over these facts would serve not only the interests of this Court, the Superior Court, and the parties, but also the witnesses. If the Court does not enter a stay in this case, the witnesses in the Underlying Litigation—including Ms. Fares and Ms. Norris—will be subjected to duplicative discovery demands, duplicative depositions, and the attendant expense and burdens of multiple litigations. The practicalities of allowing two cases to proceed in which the same facts are discovered, disputed, briefed, and determined justifies a stay.

A stay is also justified because allowing a liability insurer to pursue a declaratory judgment action in which it, in essence, seeks to prove its insured's liability for alleged knowing omissions, while its insured defends against the underlying claim would work significant prejudice to MHS and Ms. Norris. Conversely, a stay would not prejudice Republic Franklin. The ways in which allowing a coverage suit to proceed simultaneously with the underlying litigation would prejudice

---

[5] The absence of the Jane Does from the Amended Complaint does not make this case any less parallel to the Underlying Litigation. Rather, it is yet another reason to stay this case so that there are not duplicative declaratory judgments filed in the future against one or more of the Jane Does.

an insured are not unique to this case, but they are amplified by the tight overlap between the disputed facts in this case and the Underlying Litigation.  The California Supreme Court in *Montrose Chem. Corp. of Cal. v. Superior Ct.*, 6 Cal. 4th 287, 301–02, 305 (1993) ("*Montrose I*") and the California Court of Appeals in *Montrose Chem. Corp. v. Superior Ct.*, 25 Cal. App. 4th 902, 909–11 (1994) ("*Montrose II*") discussed the tension and prejudice resulting from allowing coverage litigation to proceed while the underlying litigation is pending. While neither *Montrose* decision is controlling, and this Court is not required to enter a stay as would a California court, the analysis is persuasive, cogent and in the context of this coverage dispute, compelling.

First, by seeking to prove the same allegations in this case regarding MHS's and Ms. Norris's alleged knowledge of Mr. Rutledge's wrongful conduct that Ms. Fares raises in the Underlying Litigation, Republic Franklin is effectively "join[ing] forces with the plaintiffs in the underlying actions as a means to defeat coverage." *Montrose II*, 25 Cal. App. 4th at 909-10. This is improper. *See Haskel, Inc. v. Superior Ct.*, 33 Cal. App. 4th 963, 979 (1995 (the insurer, who "is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit."); Form § I.1.a ("We will have the right and duty to defend the insured against any 'suit' seeking such payment even if the allegations of the 'suit' are groundless, false, or fraudulent."); *Mar. Terminal*, 2015 WL 3952766, at *4 (noting "conflict of interest" if insurer were allowed to proceed with declaratory judgment action).

Second, MHS and Ms. Norris would be prejudiced not only by being required to litigate against the very insurer who is supposed to defend them, but by being required to do so *simultaneously* while litigating the Underlying Litigation.  *See Montrose II*, 25 Cal. App. 4th at 910 (describing prejudice "when the insured is compelled to fight a two-front war, doing battle

with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers").

Third, if Republic Franklin were successful in this lawsuit, Ms. Fares would likely take the position that MHS and Ms. Norris are collaterally estopped from relitigating any facts in the Underlying Litigation. In contrast, if MHS and Ms. Norris prevail, it would be difficult if not impossible for either to use this Court's judgment in the Underlying Litigation. This imbalance, and the potential for Republic Franklin's efforts to be used against its insured, is another form of prejudice. *Montrose I*, 6 Cal. 4th at 302 ("For example, when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious.").

Finally, entering a stay in this dispute over the duty to indemnity is entirely consistent with this Court's decisions in *AIG Property Casualty Co. v. Green*, 150 F. Supp. 3d 132 (D. Mass. 2015) denying a motion to stay in a dispute over the duty to indemnify *and* the duty to defend. *Green* was a very different case. In *Green* "the court [] focus[ed] on the duty to defend, as the parties have primarily addressed that issue in their briefing." *Id.* 138 n.5. Here, the insurer does not dispute its duty to defend. The Court in Green explicitly recognized the difference between the two duties, and the possibility that a decision on the duty to indemnify might not have been ripe because the underlying litigation against the insured had not been completed. *Id.* ("To the extent a ruling on AIG's duty to indemnify is not ripe, the court can address that issue by way of a substantive motion to dismiss or other dispositive motion, rather than in the context of a motion to stay this action in its entirety."). Ultimately, in *Green*, the Court resolved the purely legal questions governing the duty to defend on a motion for judgment on the pleadings. In doing so, however,

12

the Court wrote: "since the underlying defamation cases have not yet been resolved . . ., '[t]he issue of indemnification must await the completion of trial' or settlement.") *AIG Prop. Cas. Co. v. Green*, 217 F. Supp. 3d 415, 429 (D. Mass. 2016) (quoting *Newell-Blais Post*). In this coverage dispute, the facts relating to MHS's and Ms. Norris's alleged knowledge are very much in dispute and the primary dispute between Republic Franklin and its insureds regarding the application of the Form is a factual, rather than legal, one.[6]

## V.   CONCLUSION

For the foregoing reasons, the Court should stay this matter pending the outcome of the Underlying Litigation.

Respectfully submitted,

MISS HALL'S SCHOOL, INC. and
JEANNIE NORRIS

By their attorneys,

*/s/ Benjamin A. Goldberger*
Benjamin A. Goldberger (BBO #654357)
bgoldberger@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
617.621.6536

Dated:  October 6, 2025

---

[6] MHS and Norris also note that in *Green* both the coverage dispute and the underlying case were pending not only in the same court, but before the same judge. This placed the Court's ability to ameliorate prejudice from simultaneous litigation at its zenith. In the instant case, where the Underlying Litigation is pending in state court, the Court's ability to lessen the prejudice of parallel litigation is significantly diminished.

## CERTIFICATE OF SERVICE

    I, Benjamin A. Goldberger, hereby certify that I filed this document with the Clerk of the United States District Court for the District of Massachusetts on this 6th day of October 2025 by using the CM/ECF system, with service made on counsel for all parties to this action through their registration in the CM/ECF system.

                                            */s/ Benjamin A. Goldberger*
                                            Benjamin A. Goldberger